IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 14, 2017 Session

## STATE OF TENNESSEE v. CHASTITY COLEMAN

**Appeal from the Circuit Court for Giles County**
**No. 13022, 13272     Stella L. Hargrove, Judge**

_____

### No. M2017-00264-CCA-R3-CD

_____

The Defendant, Chastity Coleman, entered into a plea agreement with the State with an agreed-upon sentence. During the plea colloquy, the trial court invited and met with the Defendant outside the presence of the prosecutor and trial counsel after which the court decided to reduce the Defendant's period of incarceration. The State appeals. We conclude that we have jurisdiction to review the trial court's judgments under Tennessee Rule of Appellate Procedure 3. We further conclude that the trial court committed three errors that each independently require reversal: (1) the trial court acted improperly by engaging in *ex parte* communication with the Defendant; (2) the trial court erred in failing to rule on the State's motion to recuse while continuing to hear matters involving this case; and (3) the trial court lacked the authority to unilaterally modify the plea agreement. Because the trial judge has predetermined the sentence to be imposed, we remove the trial judge from further consideration of this case. We vacate the judgments and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Vacated;**
**Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Jonathan W. Davis, Assistant District Attorney General, for the appellant, State of Tennessee.

Shara A. Flacy (on appeal), Ardmore, Tennessee, and Robert D. Massey (at hearing), Pulaski, Tennessee, for the appellee, Chastity Coleman.

## OPINION

# FACTUAL AND PROCEDURAL HISTORY

The Defendant was charged with multiple drug-related crimes in multiple indictments. In indictment 12866, the Defendant was charged with unlawful possession of drug paraphernalia committed on July 13, 2015. In indictment 13022, the Defendant was charged with five offenses committed on January 9, 2015: possession of 0.5 grams or more of cocaine with intent to sell; possession of less than 14.175 grams of marijuana; possession of hydrocodone with intent to sell; introduction of contraband into a penal institution; and possession of drug paraphernalia. The five-count indictment 13022 was a superseding indictment which took the place of a prior indictment charging all of the crimes in indictment 13022 as well one count of the sale of less than 0.5 grams of cocaine in a school zone, which the record indicates took place on December 31, 2014.

The Defendant entered into a plea agreement with the State. Under the agreement, the Defendant was to plead guilty to two of the offenses in indictment 13022: possession of 0.5 grams or more of cocaine with intent to sell and introduction of contraband into a penal institution. The other three counts of indictment 13022, as well as the charge in indictment 12866, were to be dismissed by the State. As part of the agreement, the Defendant was also to plead guilty to an additional charge of delivery of less than 0.5 grams of cocaine. This charge was to be brought by criminal information in place of the offense originally charged in the preceding indictment as the sale of less than 0.5 grams of cocaine in a school zone. The recommended sentences were to be ten years for the possession of cocaine with intent to sell, three years for introduction of drugs into a penal institute, and three years for the sale of under 0.5 grams of cocaine. The Defendant was to serve one hundred and twenty days of each sentence in prison on weekends and to serve the remaining time on probation, and all sentences were to be served concurrently.

On August 9, 2016, the parties came to court to finalize the agreement. The Defendant waived her right to indictment by a grand jury in the delivery of cocaine charge. The trial court then went over the terms of the plea agreement with the Defendant. The trial court determined that the Defendant was not under the influence of drugs or alcohol and reviewed the Defendant's right to plead not guilty, to insist on a jury trial, to call witnesses and cross-examine the State's witnesses, and to refrain from incriminating herself. The trial court informed the Defendant that if the court chose to "accept the paperwork today … it ends here." The trial court elaborated, "You understand there will be no further trials, no hearings, and no appeal of these cases?" The Defendant confirmed that she understood that the entry of the pleas would settle the cases. The trial court asked the Defendant if she was guilty of the charges and if she gave up her right to a jury trial, and the Defendant answered in the affirmative.

The trial court then asked the Defendant if she was satisfied with her counsel's performance and if there was "anything at all you want to discuss with me privately about that." The Defendant responded that she wished to avail herself of the private discussion with the judge, and the trial judge, Defendant, and court reporter went into the judge's chambers outside the presence of the prosecutor and defense counsel. The discussion in chambers was transcribed by the court reporter, who, according to a motion filed by the State, refused to release the transcript to the prosecutor prior to obtaining the trial court's permission, which was granted by order approximately a month after the private conference, on September 6, 2016.

In chambers, the Defendant expressed her belief that the State was being "a little hard" on her considering that these were her first felony charges. She told the judge that she believed the State was retaliating because the Defendant had not been able to give them information regarding a Mr. Jimenez.[1] The Defendant told the judge that her sentence would be a hardship on her because her daughter was a senior in high school and the terms of her probation would prevent her from attending various school events, including graduation. She was also concerned that she might lose her job as a supervisor in a local factory. She explained that her job required mandatory overtime on weekends and that missing the required time could lead to her dismissal. The trial judge told the Defendant that an exception could be made for her daughter's graduation. The judge then told the Defendant that she could still withdraw from the plea. The Defendant asked if that would mean going to trial, and the judge affirmed that it would unless another settlement could be reached. The judge informed the Defendant, "I can't make them plea bargain," and told the Defendant that it was not the court's "role" to make a recommendation regarding sentence. The judge and the Defendant discussed pretrial jail credits and the feasibility of the Defendant serving weekends in jail given her job requirements. The transcript then notes, "A discussion was held off the record."

The judge and the Defendant finished conferring and subsequently returned to court to continue the plea colloquy with the attorneys present. The trial court began by asking the Defendant whether she was satisfied with her attorney's performance, whether her attorney had explained the elements of each offense to her, and whether her attorney had informed her of her exposure if she were convicted at trial of the offenses to which she was pleading guilty, and the Defendant responded in the affirmative.

---

[1] Mr. Jimenez's name was also spelled "Jiminez" in the record. At a subsequent hearing, the trial court and attorneys discussed that Mr. Jimenez and another co-defendant had successfully suppressed the results of the search which resulted in indictment 13022 and that they accordingly were not facing further charges within the county.

The State's attorney recited the factual bases for the convictions. He stated that the January 9, 2015, offenses resulted from a search warrant which revealed that the Defendant had over one ounce of cocaine in her possession and that the Defendant was taken to jail, where additional cocaine was found on her person. The charge brought by criminal information was based on the Defendant's involvement with the sale of .42 grams of cocaine to a confidential informant on December 31, 2014. Defense counsel noted additionally that this last charge "could have been a school zone case that would have caused [the offense] to be a B felony in the eight to twelve range with a required minimum service of eight years" but that the State had agreed to bring a criminal information consistent with the offense to which the Defendant was pleading guilty.

The trial court found that the pleas had a factual basis, informed the Defendant of the consequences of a felony conviction, and questioned her on the record regarding her employment situation. Then the following discussion took place:

> THE COURT: And I want to knock it down to 90 days, instead of 120, for this first offender. I understand there's some serious charges here; however, she's doing so well I don't want to risk her losing that job on the weekends. So I would accept 90 days, credit for time served, the rest on consecutive weekends. That's what I want to approve.

> [PROSECUTOR]: Well, Your Honor, the State's not going to be willing to go forward with that. We –

> THE COURT: Well, the judge is.

> [PROSECUTOR]: That's fine, Your Honor, but the State's — we'll withdr[a]w our criminal information on this matter and withdraw our signatures from the plea agreement.

> THE COURT: Well, that's fine. I'll set it for trial, and if she's convicted that would be her punishment.

The court asked defense counsel for his "position," and he responded that while he thought the disposition was "a bit stiff," the Defendant had preferred the option that would allow her to keep her job rather than "run the risk of going to trial and maybe get convicted of a case that would have mandatory prison time at a minimum of eight years." The trial court noted its belief that the State was retaliating for the Defendant's refusal to help with the conviction of Mr. Jimenez, and the prosecutor protested that this belief was inaccurate. The court concluded, "[T]his Judge will not accept 120 days for this defendant."

- 4 -

At the conclusion of the hearing, then, it appeared that the trial judge had chosen to reject the plea agreement as too harsh on the Defendant. The day after the hearing, the State withdrew the criminal information and sought a new indictment, indictment number 13272, in which it charged the Defendant with the sale of cocaine in a school zone. Faced with the possibility of going to trial on this charge, the Defendant filed a motion to "finalize" her plea, arguing that the plea was not one with a negotiated sentence and that the trial court could properly alter it. The State, after requesting the transcript of the *ex parte* hearing, filed a motion asking the trial judge to recuse herself. The State asserted that the judge had violated certain Rules of Judicial Conduct, that the judge erred by considering evidence presented outside the court, and that the judge was no longer impartial.

The court, addressing these motions at a hearing on December 20, 2016, was swayed by the Defendant's argument that the agreement did not contain a negotiated sentence, and it determined that it had the authority under Tennessee Rule of Criminal Procedure 11 to modify the plea agreement. The court noted that it had previously "completed that acceptance of the plea agreement with that modification," and defense counsel agreed that the court did not need to recite the terms of the plea or make sure that the Defendant understood her rights because the court had already done so at the previous hearing. The Defendant was then placed under oath, recited her understanding of the revised agreement, and testified regarding the overtime requirement at her job. When the Defendant broached the subject of seeking an exception to go to church, the prosecutor left the courtroom. The trial court requested the prosecutor to return "as a courtesy" and to sign the revised plea agreement as to form, and the prosecutor did so. The trial court then formally accepted the plea, as altered. The prosecutor noted that the State was objecting "not so much" to the reduction of thirty days as to the fact "that the Court gleaned much of its information from the *ex parte* communication with [the Defendant] privately in chambers," and that the court was unilaterally amending the charge related to the sale of drugs in a school zone. The prosecutor ultimately signed the form, "approved as to form as ~~instructed~~ requested[2] by the Court." The judge declined to rule on the motion for recusal, instead concluding that, if her decision were reversed on appeal, then she would "probably … recuse" herself. The State filed a timely appeal.

## ANALYSIS

On appeal, the Defendant contends that the State has no appeal as of right from the trial court's decision and that this court therefore lacks jurisdiction to consider the matter.

___

[2] This change was made by the trial judge after she requested and received the prosecutor's permission.

The Defendant argues in the alternative that the trial court had the authority to modify the sentence because the plea agreement did not contain an agreed-upon sentence, but only a sentencing recommendation. The State counters that this court has jurisdiction and that the trial court acted improperly in holding an *ex parte* meeting with the Defendant, in basing the sentencing decision on this meeting, and in altering a plea agreement that contained an agreed-upon sentence.

## I. Jurisdiction

The Defendant asserts that the State has no appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The State responds that it has a right of appeal under Rule 3 as well as a right of appeal under Tennessee Code Annotated section 40-35-402. In the alternative, the State urges this court to consider the pleadings as a petition for the writ of certiorari.

The Tennessee Rules of Appellate Procedure require an appellate court to determine whether it has jurisdiction on appeal. *See* Tenn. R. App. P. 13(b). The State has no right to appeal in a criminal prosecution unless the right may be found in a constitutional provision or statute. *State v. Meeks*, 262 S.W.3d 710, 718 (Tenn. 2008). "When a statute affords a state or the United States the right to an appeal in a criminal proceeding, the statute will be strictly construed to apply only to the circumstances defined in the statute." *Id.*

Under Tennessee Rule of Appellate Procedure 3(c),

> **(c) Availability of Appeal as of Right by the State in Criminal Actions.** In criminal actions an appeal as of right by the state lies only from an order or judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2) setting aside a verdict of guilty and entering a judgment of acquittal; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court. The state may also appeal as of right from a final judgment in a habeas corpus, extradition, or post-conviction proceeding, from an order or judgment entered pursuant to Rule 36 or Rule 36.1, Tennessee Rules of Criminal Procedure, and from a final order on a request for expunction.

"Thus, the plain language of the statute allows the State an appeal in only six limited circumstances, to the exclusion of all others." *State v. Larenzo Jerome Morgan, Jr.*, No. W2016-00114-CCA-R3-CD, 2016 WL 5643596, at *2 (Tenn. Crim. App. Sept. 29, 2016)

(citing *State v. Adler*, 92 S.W.3d 397, 400 (Tenn. 2002), *superseded by statute on other grounds as recognized in State v. L.W.*, 350 S.W.3d 911, 915-16 (Tenn. 2011)).

The Defendant argues that this appeal is not proper under Rule 3(c), citing *State v. Leath*, 977 S.W.2d 132, 133 (Tenn. Crim. App. 1998), and *State v. Keanest D. Whitson*, No. E2010-00408-CCA-R3-CD, 2011 WL 2555722, at *4 (Tenn. Crim. App. June 28, 2011). The State posits that the decision had the substantive effect of dismissing an indictment and that the case is reviewable under Rule 3(c)(1).

In *Leath*, the defendant entered into a plea agreement in which two counts in the indictment were to be dismissed in exchange for a guilty plea on a third count. 977 S.W.2d at 133. The trial court, over the prosecution's objection, stated that it would accept the plea agreement but modify the sentence to reduce it from eight years of incarceration to six. *Id.* at 134. This court concluded that the State had no appeal as of right under Rule 3. *Id.* at 135. However, the court chose to consider the appeal as a petition for writ of certiorari, and addressed the merits of the issue. *Id.*

In *Keanest D. Whitson*, the defendant was charged with several crimes related to an automobile accident he caused while intoxicated. 2011 WL 2555722, at *1-2. The defendant was serving a community corrections sentence prior to the accident, and the State made its plea offer to settle the new charges contingent on the fate of the defendant's community corrections violation. *Id.* at *2. The defendant was to plead guilty to four charges related to the accident, one of which had been reduced from the indicted offense, and also to plead guilty to the violation of his community corrections sentence. *Id.* The plea agreement required the defendant to be resentenced to fourteen aggregate years for the new crimes and the community corrections violation, with six years of incarceration to be followed by eight years of probation. *Id.* After hearing some proof regarding the defendant's prior success in the community corrections program, the trial court refused to order incarceration, and the prosecutor indicated that the plea was contingent on incarceration and that the State intended to withdraw the plea. *Id.* The trial court then told the defendant that if he chose to enter open guilty pleas, the trial court would impose the sentence it had just announced, and the defendant took the offered escape from incarceration. *Id.* at *3.

On appeal, this court issued a fractured opinion. As one judge stated, "The members of this panel agree on one thing: the Rules of Appellate Procedure do not afford the State a right to appeal on any of the claims raised." *Keanest D. Whitson*, 2011 WL 2555722, at *12. Judge James Curwood Witt, Jr., concluded that the decision was not reviewable under Rule 3(c)(1) because even though the conviction on the lesser included offense served as acquittal on the greater, the indictment itself was not dismissed. *Id.* at *5. Judge Witt noted that the trial court did not modify a sentence that was part of a plea

agreement but instead acted within its authority in rejecting the agreement and then, accepting the defendant's open pleas, imposing a sentence. *Id.* at *8. Judge Witt accordingly concluded that only the judgment allowing the defendant to plead guilty to a lesser included offense was reviewable via writ of certiorari. *Id.* at *9. Judge Joseph M. Tipton, on the other hand, concluded that this court could not consider the challenge to the judgments under the writ of certiorari due to failure to follow statutory form but that "an appeal as of right [was] appropriate to resolve the sentencing issues." *Id.* at *14 (concurring and dissenting); *but see L.W.*, 350 S.W.3d at 916 (concluding that the statutory procedural requirements do not apply to criminal cases). Judge D. Kelly Thomas, Jr., wrote separately that he believed that the entirety of the trial court's actions, including those related to the community corrections revocation, were reviewable pursuant to the writ of certiorari. *Id.* at *14 (concurring and dissenting).

The State asserts that in this case, the trial court's action had the effect of dismissing an indictment, information, or complaint because part of the plea agreement included the dismissal of an indictment. In *Leath*, the dismissal of certain charges within the indictment as part of a plea agreement did not serve to trigger Rule 3(c)(1). 977 S.W.2d at 133, 135; *see also State v. Vickers*, 970 S.W.2d 444, 448 n.4 (Tenn. 1998) (noting that under Rule 3(c)(1), the pretrial dismissal of one count did not have the substantive effect of dismissing the entire indictment until the defendant was acquitted of the remaining count); *but see State v. Oscar Bernal*, No. M1999-00079-CCA-R3-CD, 2000 WL 19761, at *1 (Tenn. Crim. App. Jan. 13, 2000) (noting that for purposes of consistency of verdicts, each count is considered a separate indictment but concluding that an appeal would be evaluated under Rule 10 if it were improper under Rule 3). The court in *Keanest D. Whitson* likewise concluded that the acquittal of a greater charge did not confer jurisdiction under Rule 3(c)(1). 2011 WL 2555722, at *14.

In this case, however, an entire indictment, indictment 12866, charging the Defendant with unlawful possession of drug paraphernalia committed on July 13, 2015, was dismissed pursuant to the original plea agreement and according to the judgments entered by the trial court.[3] The Defendant observes that the State failed to list the dismissed indictment, number 12866, in the notice of appeal and asserts that it therefore cannot premise jurisdiction on Rule 3(c)(1). However, this court may waive the filing of a notice of appeal relative to an omitted indictment when it serves the interest of justice. Tenn. R. App. P. 4(a); *State v. Vigil*, 65 S.W.3d 26, 32 (Tenn. Crim. App. 2001) (noting that only one indictment was contained in the notice of appeal and technical record, but nevertheless reviewing both convictions, which were consolidated for trial, when the

---

[3] An order showing that the prosecution agreed not to prosecute indictment 12866 and the remaining counts of indictment 13022 was signed by the prosecutor "as ~~instructed~~ requested [sic] by the Court."

- 8 -

record contained both judgments and the appeal had been treated as an appeal of both convictions). In this case, the indictment was dismissed as a material element of a plea agreement between the parties, and the State has appealed the irregularities of the plea procedure. We conclude that the appeal extends to the indictment omitted from the notice of appeal and waive the notice of appeal relative to the omitted indictment. Because the agreement had the substantive effect of dismissing an indictment, we have jurisdiction to review the trial court's decision in this case under the plain terms of Rule 3(c)(1).

Furthermore, the trial court's judgments are reviewable as sentencing decisions granting the Defendant probation. The State does not argue that this appeal falls under Rule 3(c)(4), authorizing this court to review "granting or refusing to revoke probation." Nonetheless, the State has an appeal as of right from a trial court's decisions granting probation. *State v. James William Wilson, Jr.*, No. 4, 1987 WL 20349, at *1 (Tenn. Crim. App. Nov. 25, 1987); *see also State v. Iris A. Jones*, No. M2013-00938-CCA-R3-CD, 2014 WL 4101210, at *4-5 (Tenn. Crim. App. Aug. 20, 2014) (concluding that judicial diversion is probationary sentence reviewable pursuant to Rule 3). We note that in *Keanest D. Whitson*, the court concluded that it could not review the trial court's actions under Rule 3 despite the fact that the sentences in that case included an eight-year community corrections sentence. 2011 WL 2555722, at *5. In this case, the trial court granted probation on all of the sentences. Under the terms of the statute, "an appeal as a matter of right is available … to the state *when probation ... has been granted*." *State v. Stephen J. Udzinski*, No. 01C01-9610-CC-00431, 1998 WL 44922, at *4-5 (Tenn. Crim. App. Feb. 5, 1998). Accordingly, we conclude we have jurisdiction to review the judgments under Rule 3(c)(4).

Likewise, Tennessee Code Annotated section 40-35-402 provides that the State may appeal when the trial court has "granted all or part of the sentence on probation." T.C.A. § 40-35-402(b)(2). Here, the State challenges the imposition of a probationary term that is at odds with the plea agreement entered into by the parties. We further find it instructive that the court in *Leath* analyzed whether this provision could sustain jurisdiction but concluded that because the sentence did not involve probation, it could not. 977 S.W.2d at 134. This case, which does involve probation, is distinguishable. Accordingly, even if this court did not have jurisdiction under Rule 3(c)(1) pertaining to decisions which have the substantive effect of dismissing an indictment, the sentencing decisions would nevertheless be reviewable under Rule 3(c)(4) and Tennessee Code Annotated section 40-35-402(b)(2). *See Leath*, 977 S.W.2d at 134; *see also Keanest D. Whitson*, 2011 WL 2555722, at *14 (Tipton, J., concurring and dissenting).

## II. Alteration of Plea Agreement

The State asserts that the trial court exceeded its authority when it essentially altered the plea agreement between the parties based on its *ex parte* conversation with the Defendant. The Defendant argues that the plea agreement was a nonbinding recommendation and that the trial court was therefore within its authority to impose a sentence different from that to which the parties had agreed. We conclude that the judgments must be vacated on three grounds: the trial court's improper *ex parte* communication with the Defendant, the trial court's refusal to rule on the motion to recuse, and the trial court's extra-jurisdictional alterations to the agreement.

### A. *Ex parte* Communication

The State asserts that the trial court's reliance on information it received during an *ex parte* meeting with the Defendant was improper. Tennessee Supreme Court Rule 10, Rule of Judicial Conduct 2.9 states that:

> **(A)** A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:
>
> > (1) When circumstances require it, *ex parte* communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:
> >
> > > (a) the judge reasonably believes that no party will gain procedural, substantive, or tactical advantage as a result of the *ex parte* communication; and
> > >
> > > (b) the judge makes provision promptly to notify all other parties of the substance of the *ex parte* communication, and gives the parties an opportunity to respond.
> >
> > (2) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties a reasonable opportunity to respond to the advice received.

(3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter.

….

(5) A judge may initiate, permit, or consider any *ex parte* communication when expressly authorized by law to do so.

Tenn. Sup. Ct. R. 10, RJC 2.9. "Clearly, a judge may neither permit nor consider *ex parte* communications …." *State v. David Gary Millsaps*, No. 03C01-9601-CC-00044, 1998 WL 79889, at \*3 (Tenn. Crim. App. Feb. 25, 1998); *see also State v. Cash*, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993) ("Thus, the trial judge should not have discussed factual matters subject to future resolution with a prosecutor in the case."). Should any such *ex parte* communication occur, the judge is required to "make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond." Tenn. Sup. Ct. R. 10, RJC 2.9(B). This Rule also forbids judges from launching an independent investigation into facts or considering facts outside the evidence, except when judicial notice is warranted. Tenn. Sup. Ct. R. 10, RJC 2.9(C).

As further applicable to this matter, a trial judge is not permitted to "make pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office" in connection with cases that are likely to come before the court. Tenn. Sup. Ct. R. 10, RJC 2.10(B). A judge whose impartiality might reasonably be questioned for some reason, including due to personal knowledge of facts in dispute, is required to disqualify herself. Tenn. Sup. Ct. R. 10, RJC 2.11(A)(1).

Litigants are entitled to a fair trial in front of an impartial tribunal. *Smith v. State*, 357 S.W.3d 322, 342-43 (Tenn. 2011). "'[A] fair trial is one in which evidence subject to adversarial testing is presented *to an impartial tribunal* for resolution of issues defined in advance of the proceeding.'" *Id.* at 343 (Tenn. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984) (emphasis in *Smith*)). When improper *ex parte* communication occurs, this court has previously analyzed to see whether the objecting party has made a showing of prejudice. *State v. Tune*, 872 S.W.2d 922, 928-30 (Tenn. Crim. App. 1993) (concluding reversal was not warranted because the defendant demonstrated no prejudice from any communications between the judge and jury and because the defendant failed to object or show content of communication); *see also State v. Michael Smith*, No. W2014-

00900-CCA-R3-CD, 2015 WL 6166606, at *6 (Tenn. Crim. App. Oct. 21, 2015), *perm. app. denied* (Tenn. Jan. 19, 2016) (analyzing *ex parte* communication with jurors for harmless error); *State v. Pamela Taylor*, No. W2012-02535-CCA-R3-CD, 2014 WL 4922629, at *28 (Tenn. Crim. App. Sept. 30, 2014) (concluding that the defendant was not entitled to a new trial when the trial judge immediately ended a discussion initiated by the State's attorneys and put the matter on the record); *State v. Timothy W. Sparrow*, No. M2012-00532-CCA-R3-CD, 2013 WL 1089098, at *24 (Tenn. Crim. App. Mar. 14, 2013) (noting that *ex parte* communication with the jury is grounds for reversal when a party has objected and shows prejudice or the court is unable to determine the action was harmless); *State v. Stacy Dewayne Ramsey*, No. 01C01-9412CC00408, 1998 WL 255576, at *15 (Tenn. Crim. App. May 19, 1998) (finding no prejudice when communications with the prosecutor only concerned scheduling matters); *State v. Jones*, 735 S.W.2d 803, 810 (Tenn. Crim. App. 1987) (concluding that *ex parte* conference with the prosecutor did not warrant reversal when it did not involve matters regarding trial and when the defendant could show no prejudice); *cf. Guy v. Vieth*, 754 S.W.2d 601, 605 (Tenn. 1988) ("The best position seems to us to be that a trial judge's *ex parte* communication with a jury in a civil case does not require reversal per se, but reversal is required where a *timely* complaining party shows specific prejudice or where, owing to the nature of the *ex parte* communication, the reviewing court is unable to determine whether the action was actually harmless.").

Here it is plain from the record that the trial court decided to alter the sentence based on its private communications with the Defendant. *See* Tenn. Sup. Ct. R. 10, RJC 2.9(A). When the prosecution objected, the trial court announced that it would impose the sentence it preferred if the prosecutor should repudiate the altered agreement. *See* Tenn. Sup. Ct. R. 10, RJC 2.10(B). Moreover, even though the trial court ultimately authorized the preparation of a transcript of the meeting, the transcript reflects that part of the discussion was held "off the record," and this discussion remains unavailable to both the State and this court. *See* Tenn. Sup. Ct. R. 10, RJC 2.9(B). "This is not an acceptable sequence of events in a criminal trial." *State v. Nicholas Wyatt Barish*, No. E2012-01353-CCA-R3-CD, 2013 WL 5436909, at *17 (Tenn. Crim. App. Sept. 27, 2013) (reversing for a new trial when the jury returned a verdict convicting the defendant of a lesser included offense without indicating it had acquitted him of the charged offense, and the trial court, outside the presence of the parties, sent the verdict back with a comment that it was illegal, resulting in a second verdict convicting the defendant of the charged offense).

The trial judge invited the Defendant to participate in a private conversation outside the presence of the attorneys. The Defendant, unschooled in the intricacies of judicial ethics, used this opportunity to air her grievances regarding what she felt was an unduly harsh plea agreement. The trial court encouraged this communication and

- 12 -

privately promised the Defendant that if she did well on probation, she would be able to attend her daughter's graduation, despite the restrictions on her movements that formed part of the terms of her probation. The trial court then proceeded to accept the pleas in open court but announced without warning that it would reduce the sentence of incarceration. We note parenthetically that the reduction of the sentence bore no rational relationship to the trial court's stated purpose of salvaging the Defendant's job, since the service of the sentence was still to take place on consecutive weekends, when the Defendant had indicated she was frequently required to work mandatory overtime. When the State objected to these *ultra vires* proceedings, the judge indicated that the parties could proceed to trial and that the judge would impose the reduced sentence if the Defendant were convicted.[4]

The Defendant argues that any error in the *ex parte* communication was cured when the Defendant was put on the stand at the second plea hearing and the State had the opportunity to cross-examine her. We disagree. *Compare State v. Mark Elihu Cooper*, No. W2013-02530-CCA-R3-CD, 2014 WL 4384965, at *5 (Tenn. Crim. App. Sept. 5, 2014) (concluding that defendant waived the issue of the trial court's *ex parte* communication with the police chief prior to sentencing when the defendant failed to object and the police chief testified in open court). First, as noted above, the entirety of the *ex parte* meeting has not been transcribed. Second, the judge's decision to initially reject the plea agreement was clearly based not on the findings and principles mandated by statute, *see, e.g.*, T.C.A. §§ 40-35-103, -210, but on the conversation she had privately with the Defendant. At the subsequent hearing, the State had an opportunity to cross-examine the Defendant, but the judge had already determined the sentences and imposed them according to her previous statements.

The trial judge's actions were objectionable in myriad ways. She initiated and encouraged *ex parte* communication with a party. *See* Tenn. Sup. Ct. R. 10, RJC 2.9(A). She used the *ex parte* communication to receive information pertinent to the case. *See* Tenn. Sup. Ct. R. 10, RJC 2.9(C). She made in-chambers promises to the Defendant regarding the service of her sentence. *See* Tenn. Sup. Ct. R. 10, RJC 2.10(B). The State was not promptly informed of the content of the *ex parte* communications. *See* Tenn. Sup. Ct. R. 10, RJC 2.9(B). The trial judge then announced, without having reviewed any of the statutorily mandated factors applicable to sentencing, that she had already decided the sentence that would be imposed should the parties proceed to trial. *See* Tenn. Sup. Ct. R. 10, RJC 2.10(B). The judge's statement was apparently made in an attempt to pressure the State's attorney to agree to the alterations of the agreement. The judge acted

---

[4] We note that the judge would have been without authority to impose this sentence because, as the parties had clarified at the first plea hearing, the State intended to charge the Defendant with a drug crime committed in a school zone which carried a mandatory minimum time of incarceration.

improperly, without statutory authority, and in violation of the Rules of Judicial Conduct. The State has demonstrated prejudice in that the sentencing decision was a result of the improper *ex parte* conduct.

While we agree with both parties that the alterations to the plea agreement were minimal, the violence that was done to the orderly administration of justice and to the integrity of the judicial process was extensive. The court's actions were grossly improper in that they shrouded the judicial process in obscurity and undermined confidence in the impartiality of the justice system. We conclude that this unauthorized proceeding alone requires reversal.

### B. Refusal to Rule on the Motion to Recuse

The trial judge's grievous error in initiating, engaging in, and considering *ex parte* communication in making her rulings was compounded by her refusal to rule on the State's motion to recuse. Shortly after the first hearing, the State filed a motion asking the judge to recuse herself, and the State amended this motion to allege the violation of various Rules of Judicial Conduct after it obtained the transcripts of the *ex parte* conference. At the subsequent hearing, the trial court proceeded to impose the judgments it had previously announced. In addressing the motion to recuse, the judge stated that "if, indeed, … there is an appeal and the Appellate Court sets aside this plea agreement as modified …, then the Court will certainly entertain a motion to recuse if, indeed, that is set aside and a trial date is set, and probably will recuse."

We note the impropriety of the trial judge deciding she would "entertain" the motion only in the event of reversal. This in effect denied the State a ruling on the motion to recuse from which it could even seek appellate review. The State's motion laid out specific allegations of improper conduct which violated the Rules of Judicial Conduct and which imbued the proceedings with an appearance of partiality. The trial judge was not at liberty to ignore this motion or to address it only if this court found the sum of her other actions amounted to reversible error.

When presented with a motion to recuse, a trial judge is obligated to promptly make a ruling on it and to refrain from further action in the case absent good cause. *See* Tenn. Sup. Ct. R. 10B § 1.02 ("While the motion is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken."); Tenn. Sup. Ct. R. 10, RJC 2.11(D) ("Upon the making of a motion seeking disqualification, recusal, or a determination of constitutional or statutory incompetence, a judge shall act promptly by written order and either grant or deny the motion."). While it appears that the State failed to comply with the procedural requirements of a Rule 10B motion for

recusal, *see* Tenn. Sup. Ct. R. 10B § 1.01 (requiring motion to be supported by an affidavit affirming factual and legal grounds and lack of improper purpose); *State v. Watson*, 507 S.W.3d 191, 193–94 (Tenn. Crim. App. 2016), *perm. app. denied* (Tenn. June 23, 2016) (noting that failure to comply with Rule made "meaningful appellate review difficult"), the trial court should have ruled on the motion even if it chose to deny the motion for failure to follow the procedural requirements.

When a trial court ignores a pending motion to recuse and enters further orders in a case without making a finding of good cause as dictated by Rule 10B section 1.02, the orders entered during the pendency of the motion to recuse may be vacated on appeal. *See Ophelia Carney v. Santander Consumer USA*, No. M2010-01401-COA-R3-CV, 2015 WL 3407256, at *7 (Tenn. Ct. App. May 28, 2015) (vacating order entered while motion to recuse was pending); *Frances G. Rodgers v. Yarboro A. Sallee*, No. E2013-02067-COA-R3-CV, 2015 WL 636740 (Tenn. Ct. App. Feb. 13, 2015) (vacating orders entered after filing of motion to recuse but prior to trial court's decision to grant motion to recuse); *see also Neal v. Hayes*, No. E2011-00898-COA-R3-CV, 2012 WL 260005 (Tenn.Ct.App. Jan. 30, 2012) (concluding prior to the enactment of Rule 10B that an order which simultaneously ruled on contested issues and granted a motion to recuse must be vacated in regard to the contested issues). We note that the Court of Appeals in *Ophelia Carney* vacated the order entered during the pendency of the motion to recuse despite the movant's failure to comply with the dictates of Rule 10B. 2015 WL 3407256, at *4 (noting failure to state that the motion was not filed for an improper purpose). On the other hand, the Court of Appeals has declined to vacate an order entered during the pendency of a motion to recuse when the trial judge had orally denied the motion to recuse prior to entering the written order on the substantive issues. *In re Conservatorship of John Danieal Tate*, No. M2012-01918-COA-10B-CV, 2012 WL 4086159, at *3 (Tenn. Ct. App. Sept. 17, 2012) (noting that entering the order regarding recusal would have been the "better practice" when the court simultaneously issued an oral ruling on the two motions but entered the written order on the substantive issue prior to the written order on the motion to recuse); *cf. Samuel C. Clemmons, et al.*, v. *Johnny Nesmith*, No. M2016-01971-COA-T10B-CV, 2017 WL 480705, at *10 (Tenn. Ct. App. Feb. 6, 2017) (noting that the trial court acted improperly when it informed the parties it would deny a motion to recuse but held further proceedings before entering a written order, but concluding that the delay itself did not rise to grounds for recusal). Here, the trial judge unjustifiably intertwined her rulings on the recusal with her substantive rulings, indicating that her ruling on the motion to recuse would hinge on whether her other judgments were reversed on appeal. The trial court did not deny the motion or indeed enter any order regarding it. Because the trial court ignored the motion to recuse in contravention of the Rule, we conclude that the failure to rule on the motion to recuse was itself error. Accordingly, the failure to rule on the motion to recuse provides a separate basis to vacate the judgments filed while the motion to recuse was pending.

## C. Authority to Alter Plea

The Defendant asserts that the agreement between the parties was not contingent on the sentence set out in the agreement and that the trial court therefore had the authority to alter the plea. The State counters that the plea was one with an agreed-upon sentence and that the trial court's actions were improper. The record supports the State's position.

Under Rule 11 of the Tennessee Rules of Criminal Procedure, a defendant may plead guilty pursuant to a plea agreement. The Rule identifies three types of plea agreements:

**(c) Plea Agreement Procedure.**

(1) *In General.* The district attorney general and the defendant's attorney, or the defendant when acting pro se, may discuss and reach a plea agreement. The court shall not participate in these discussions. If the defendant pleads guilty or nolo contendere to a charged offense or a lesser or related offense, the plea agreement may specify that the district attorney general will:

(A) move for dismissal of other charges;

(B) recommend, or agree not to oppose the defendant's request for, a particular sentence, with the understanding that such recommendation or request is not binding on the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

Tenn. R. Crim. P. 11(c). Accordingly, the Rule contemplates guilty pleas of three types: pleas that are contingent on the dismissal of other charges ("Type A" pleas), pleas that are contingent on the prosecutor's nonbinding recommendation of a sentence to the court ("Type B" pleas), and pleas that are contingent on a specific sentence ("Type C" pleas). *Id.*; *State v. Donna Marie Ikner*, No. E2007-00943-CCA-R3-CD, 2008 WL 2579178, at *3-4 (Tenn. Crim. App. June 30, 2008). This list in the Rule is not meant to be exclusive, and the Advisory Commission Comment notes that guilty pleas are also frequently entered in exchange for reduced charges or recommendations of alternative sentencing. Tenn. R. Crim. P. 11, Advisory Comm'n Cmt. The Comment further notes that pleas under (c)(1)(A) or (c)(1)(C) are "contingent on the agreement as stated." *Id.* A trial court presented with such a plea is faced with three options: it may accept the plea, it may

reject the plea, or it may defer its decision until the presentence report is available. Tenn. R. Crim. P. 11(c)(3)(A); Tenn. R. Crim. P. 11, Advisory Comm'n Cmt. If the court rejects the agreement, the defendant must have the opportunity to withdraw the plea. Tenn. R. Crim. P. 11(c)(5). The trial court, in rejecting a plea, must advise the defendant that the court is not bound by the plea, inform the parties that the plea is rejected, give the defendant the opportunity to withdraw the plea, and advise the defendant that if the plea is not withdrawn, the court may impose a harsher sentence than that contemplated by the plea agreement. *Id.* We note that the Rules forbid the trial court's involvement in a plea negotiation. Tenn. R. Crim. P. 11(c)(1).

On the other hand, nonbinding pleas under (c)(1)(B) allow the court to impose a sentence contrary to the prosecutor's recommendation, but in these types of pleas the court is required to inform the defendant that the sentence may vary from the agreement and that the plea may not be withdrawn based on any variance. "If the agreement is of the type specified in Rule 11(c)(1)(B), the court shall advise the defendant that the defendant has no right to withdraw the plea if the court does not accept the recommendation or request." Tenn. R. Crim. P. 11(c)(3)(B). This warning constitutes "[t]he essence of Rule 11(c)(3)(B)." Tenn. R. Crim. P. 11, Advisory Comm'n Cmt.

Accordingly, the trial court's actions are circumscribed by the type of plea agreement into which the parties have entered. *See* W. Mark Ward, *Tenn. Crim. Trial Practice* § 18:10 (2017-2018 ed.). A plea agreement is a contract, and "like any contract, the parties need to reach a meeting of the minds as to what is intended." David Louis Raybin, 10 *Tenn. Practice, Crim. Practice & Procedure* § 22:32 (2017). The Defendant contends that the use of the word "recommend" and its variations in the agreement indicates that the agreement was nonbinding. The Defendant also notes that in general, the State bears the risk for any lack of clarity in the agreement and that any ambiguities are resolved in the defendant's favor. *State v. Mellon*, 118 S.W.3d 340, 347 (Tenn. 2003).

When the parties have entered a plea agreement which is dispositive of all sentencing issues, the trial court may accept the plea, but in doing so, "it must accept the agreement in its entirety, including the agreed upon sentence." *State v. Soller*, 181 S.W.3d 645, 648 (Tenn. 2005). "Rule 11 does not contain a provision that would allow a trial court to alter the terms of a plea agreement" under subsection (c)(1)(C), and the trial court lacks authority to do so. *Id.* (concluding that trial court erred when it accepted a plea agreement with an agreed-upon sentence and then subsequently granted the defendant judicial diversion). In *Leath*, the trial court accepted all portions of the plea save the length of the sentence, which it, "[f]or unexplained reasons, … unilaterally decided to reduce." *Leath*, 977 S.W.2d at 136. This court held that when a plea is

contingent upon a sentence, the trial court has no authority to unilaterally reduce the sentence. *Id.*

The trial court's authority is accordingly determined by the type of plea agreement. The plea agreement between the Defendant and the State included a chart laying out the charges to which the Defendant was pleading guilty and the "Recommendation of State" as to each charge. Nevertheless, we do not consider the use of the word "recommend" in the agreement to be dispositive because the word may be used in both binding and nonbinding agreements. *See, e.g.,* Tenn. R. Crim. P. 11, Advisory Comm'n Cmt. (using the word "recommend" in an illustrative example to describe the State's actions under both a contingent and a nonbinding plea agreement); *see also Donna Marie Ikner*, 2008 WL 2579178, at *5 (analyzing both the plea agreement and the statements of the parties in court to determine the type of plea). Although not cited by either party, the agreement contains a statement that "probation may or may not be granted, if eligible for probation, and that if [the Defendant] plead[s] 'Guilty' to more than one offense, each indictment being considered as a separate offense, the Court may order the sentences to be served consecutively, one after the other." We conclude that the written agreement is unclear regarding whether the pleas were contingent upon the imposition of the recommended sentences or manner of service.

It is nevertheless abundantly clear from the overall record that all concerned — the Defendant, the State, and the trial court — understood that the guilty pleas were contingent upon the specific recommended sentences, including manner of service. *See State v. Thoma Shawn Noles*, No. 01C01-9301-CC-00003, 1993 WL 483318, at *3 (Tenn. Crim. App. Nov. 18, 1993) (noting that the agreement was difficult to decipher because "the statements made in court and the written documents entered are contradictory" and concluding that the "totality of the circumstances" supported the conclusion that the agreement was contingent in part and non-contingent in part); *State v. James D. Reynolds*, No. 01-C-019011CR00301, 1991 WL 101871, at *2 (Tenn. Crim. App. June 14, 1991) (concluding from the transcripts that the agreement was nonbinding and noting that if the prosecutor intended the sentencing recommendation to be binding, his intentions should have been "made clear at the time the guilty plea was entered," when the trial court expressed its understanding that it was a nonbinding plea). The trial court initially went over the pleas and sentences, reciting the conviction offense of the possession of cocaine, telling the Defendant that she was "taking a ten-year sentence," and spelling out the sentencing range, probationary terms, and fines and costs. The trial court used the same language, that the Defendant was "taking" a number of years, regarding the other pleas. The trial court then informed the Defendant, "Do you understand, though, … if I accept the paperwork today that it ends here? …. You understand there will be no further trials, no hearings, and no appeal of these cases?" The

trial court accordingly understood the agreement to be binding, and the parties did not dispute that it was.

Furthermore, when the Defendant and trial court spoke outside the presence of the attorneys, the trial court told the Defendant that she could withdraw the pleas, and both the Defendant and trial judge expressed an understanding that withdrawing the pleas would mean either the recommencement of plea negotiations or a trial. The State also understood the pleas to be contingent on the sentences, and expressed its refusal to approve the plea agreement as modified. Trial counsel stated that, while he thought the disposition was "a bit stiff," he felt it was in his client's best interest to avoid the school zone charge with a mandatory minimum prison sentence and that while he hoped the prosecutor might reconsider the sentence recommendation, "that's about all [he could] do." The trial court then rejected the plea agreement, and the State indicted the Defendant in an effort to proceed to trial. The assertion that the plea recommendation was nonbinding on the court first surfaced in the Defendant's motion to "finalize" her plea. It is clear from the court proceedings that the parties and trial court all understood the sentencing recommendation to be binding.

We note also that the trial court never "advise[d] the defendant that the defendant has no right to withdraw the plea if the court does not accept the recommendation or request," as would be required if the agreement had been entered into pursuant to Tenn. R. Crim. P. 11(c)(3)(B); *see Donna Marie Ikner*, 2008 WL 2579178, at *6 (vacating guilty pleas when the trial court failed to advise the Defendant that under her "Type B" agreement, she would not be allowed to withdraw her pleas if the court chose to reject the State's recommendation). Furthermore, as the State correctly notes, the trial court made no effort to hold a sentencing hearing, as would be required for a plea agreement which entailed a nonbinding sentencing recommendation. When the parties have entered into a plea agreement with an agreed-upon sentence, the trial court is not required to hold a sentencing hearing or to review a presentence report, although the judge may choose to direct that a report be prepared. T.C.A. § 40-35-203 (b). However, when a defendant has pled guilty or been found guilty after trial, the trial court "*shall* set and conduct a sentencing hearing." T.C.A. § 40-35-203(a) (emphasis added). "There *shall* be a presentence report and hearing on any issue of sentencing not agreed upon by the parties and accepted by the court." T.C.A. § 40-35-203 (b) (emphasis added).

The only reasonable interpretation of the plea agreement from the record is that the Defendant was pleading guilty to certain crimes in exchange for a particular, agreed-upon sentence and the dismissal or reduction of certain charges. There is simply no basis in the record for the Defendant's assertion that some parts of the agreement (the entry of guilty pleas in exchange for dismissal of charges) were intended to be binding and some (sentencing recommendations) were not.

- 19 -

We conclude that the trial court had no authority to alter the agreement between the parties. The trial court expressed its understanding that the agreement was a binding one that would permanently dispose of the case between the parties and that no further proceedings would be had. The State and the Defendant indicated that they shared this understanding. No sentencing hearing was held. Because the plea agreement was one under Rule 11(c)(1)(C) and 11(c)(1)(A), the trial court did not have the authority to modify the agreement. *See Soller*, 181 S.W.3d at 648; *Leath*, 977 S.W.2d at 136. Accordingly, the judgments of the trial court are vacated.

### III. Recusal

We vacate the judgments and remand to rectify the errors made below. At the first plea hearing, the parties both expressed a desire to go forward with the entry of pleas pursuant to the agreement, but the trial court improperly rejected the plea agreement based on *ex parte* communications. The parties and the trial court apparently anticipated that the matter would be brought to trial, and the State chose to indict the Defendant on the greater charge of selling cocaine in a school zone. We think the interest of justice demands that the parties be restored to the positions they occupied prior to the trial judge's act of conducting a private meeting with the Defendant in her chambers and rejecting the plea agreement based on that private meeting. Accordingly, we direct the State to reinstate its original plea offer. *See Harris v. State*, 875 S.W.2d 662, 667 (Tenn. 1994) ("The cause is remanded to the trial court for a hearing by a new judge in which the State is directed to reinstate its original guilty plea offer and negotiate in good faith."). Should the Defendant accede to the terms of the agreement, the trial court can then choose to accept the plea agreement, reject it, or defer a decision until a presentence report has been prepared. While the trial judge has obligingly suggested that she might be amenable to "probably" recusing herself in the event of appellate reversal, our review of the record establishes that this particular judge had predetermined the sentences she would impose prior to evaluating the mandatory statutory considerations. Accordingly, it will not be necessary for the trial judge to address the motion to recuse because we direct that the matter to be set before a different judge.

**CONCLUSION**

Based on the foregoing, the judgments are vacated and case remanded for further proceedings consistent with this opinion.

_____
JOHN EVERETT WILLIAMS, JUDGE