IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 1, 2015


STATE OF TENNESSEE v. DONTE DEWAYNE WATSON

Appeal from the Criminal Court for Davidson County
No. 2011-B-1509     Seth W. Norman, Judge

_____


No. M2015-00108-CCA-R3-CD – Filed March 1, 2016
_____


Donte Dewayne Watson, the Defendant, was sentenced to eight years on community corrections under the supervision of the Davidson County Drug Court Program ("DCIV").  Following the issuance of a warrant alleging violations of the drug court agreement order and an amended warrant alleging as an additional ground an arrest for a criminal offense, the Defendant filed a request that his case be transferred back to the court that sentenced him to drug court.  The criminal court judge, who also presided over DCIV, denied the request.  Following a hearing, the criminal court revoked community corrections, resentenced the Defendant to nine years, and ordered the sentence to be served in the Department of Correction.  Discerning no error, we affirm the judgment of the trial court revoking the Defendant's community corrections.


Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed


ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Kevin Kelly, Nashville, Tennessee, for the appellant, Donte Dewayne Watson.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Glenn Funk, District Attorney General; and Dina Shabayek, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In August 2012, the Defendant pleaded guilty to one count of possession of more than 0.5 grams of a schedule II controlled substance with intent to deliver and received an eight-year sentence with the manner of service to be determined at a hearing. Following the hearing in December 2012, he was sentenced to eight years on community corrections under the supervision of DCIV, and his case was transferred from Division VI to Division IV. The Defendant began treatment in January 2013 in the Residential Treatment Program. On May 27, 2014, a warrant was issued by the judge presiding over DCIV based on an affidavit of the Defendant's community corrections case officer alleging a violation of the drug court agreement order as a result of a Facebook posting from the Defendant's cell phone. Following his arrest on the warrant, the Defendant was released without having to post bail. On July 16, 2014, the community corrections violation was sustained and the Defendant was "reinstated on an in-patient basis to [DCIV] through community corrections." On July 28, 2014, a second community corrections violation warrant was issued by the judge presiding over DCIV. The affidavit of the Defendant's community corrections case officer alleged that the Defendant got into an argument with another drug court resident and that, after a counselor stepped between the two residents, the Defendant continued to shout at the other resident and attempted to reach over the counselor to get to the other resident. The affidavit alleged a violation of Rule 5 of the drug court agreement order which provides that "any physical altercation with any member of the staff or any other resident can cause immediate dismissal[.]". An amended warrant was issued on July 29, 2014, alleging, in addition to the Rule 5 violation, a Rule 10 violation based on the Defendant's leaving the drug court treatment residence without permission following the altercation and before the police arrived. According to the affidavit, Rule 10 provides that "leaving the area of the treatment facility … without proper permission from the staff will cause immediate dismissal[.]" The affidavit stated the Defendant was considered an absconder. On August 29, 2014, a second amended warrant was issued based on an affidavit alleging a violation of Rule 14 because the Defendant had been arrested for criminal impersonation.

On December 16, 2014, the Defendant filed a "Request for Remand to Sentencing Court." At the revocation hearing on December 17, the criminal court first addressed the Defendant's motion, stating that there were approximately 120 people in DCIV and that he had "absolutely no independent recollection of [the Defendant] and was not aware of any *ex parte* communications" concerning the Defendant. The trial court denied the motion and, following the hearing, revoked the Defendant's community corrections. The Defendant was resentenced to nine years to serve in the Department of Correction. This appeal followed.

*Analysis*

The Defendant claims the criminal court erred in refusing to transfer the case to another judge and violated the Defendant's due process rights by conducting the revocation hearing. The State concedes error. We disagree with the Defendant, and "we are not required to accept the State's concession or to follow its recommendation." State v. Hester, 324 S.W.3d 1, 69 (Tenn. 2010).

Initially, we note that the Defendant did not file a motion seeking disqualification or recusal pursuant to Rule 10B of the Rules of the Supreme Court and the Defendant's request to transfer the matter to another court did not comply with the basic requirements of Rule 10B so that the request could be considered a motion for disqualification or recusal. The Defendant's request was not "supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge, and by other appropriate materials[,]" nor did the request "state, with specificity, all factual and legal grounds supporting disqualification" and "affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in cost of litigation." Tenn. Sup. Ct. R. 10B, § 1.01. By electing to seek to have the case transferred to another court based solely on the fact that the criminal court judge also presided over the drug court, rather than filing a properly supported Rule 10B motion, the Defendant has made meaningful appellate review difficult. In the event of further appellate review, we will address the appeal on due process grounds based on the fact that the criminal court judge was also the judge of the drug court.

A drug court participant facing revocation of probation or community corrections is entitled to the same due process protections, such as appointment of counsel and a hearing before a neutral and detached magistrate, as any other person facing revocation. State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993); see generally Gagnon v. Scarpelli, 411 U.S. 778 (1973) (setting the minimum requirements of due process in probation proceedings).

The first Tennessee case to address the propriety of the judge of a drug court presiding over a revocation hearing of a participant was State v. Charles Hopson Stewart, No. M2008-00474-CCA-R3-CD, 2008 WL 4467179 (Tenn. Crim. App. Oct. 6, 2008). Following a hearing, the trial court revoked Stewart's probation. Id. at *2. Stewart filed a motion to modify his sentence pursuant to Tennessee Rule of Criminal Procedure 35. The trial court conducted a hearing in which numerous witnesses testified. Following this hearing, the trial court asked members of the drug court team to submit a written recommendation to the court. In its written order, the trial court stated "that the drug court team had met outside the presence of the court and had recommended that the defendant be terminated from the program and serve his original sentence." Id. at *3.

The court "affirm[ed] the recommendation of the team" and denied the Rule 35 motion. Id. Our court held "that the trial judge violated the defendant's due process protections in allowing the drug court team to deliberate and make recommendations to the court about the disposition of a matter that was statutorily vested in the trial judge's authority." Id. at *4. In addressing the defendant's request that a new judge conduct the revocation hearing on remand, our court stated:

> The Code of Judicial Conduct requires that judges refrain from "ex parte communications, or other communications made to the judge outside the presence of the parties concerning a pending . . . proceeding[.]" Tenn. R. Sup.Ct. 10, Code of Judicial Conduct, Canon 3.B.(7). The Code also requires disqualification of a judge "in a proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. R. Sup.Ct. 10, Code of Judicial Conduct, Canon 3.E.(1).
>
> In the present case, the trial judge received communication outside the presence of the parties concerning the matter and relied on that communication in disposing of the defendant's case. We conclude that on remand the case shall be assigned to another judge.

Id. at *5.

The next opinion of our court to address the propriety of the drug court judge conducting a probation revocation hearing for a drug court participant was State v. Brent R. Stewart, No. W2009-00980-CCA-R3-CD, 2010 WL 3293920 (Tenn. Crim. App. Aug. 18, 2010). Because both the State and the Defendant rely on Brent R. Stewart to support their positions in this appeal, we will discuss this case in detail. The case provides an excellent overview of the history and purpose of the drug court treatment program and the role of the trial judge presiding over the drug court.

The defendant pleaded guilty in 2005 to theft and burglary and was sentenced to three years to be served on probation. He violated his probation and agreed to a partial revocation of six months in jail and, upon his release, enrollment in the drug court treatment program. He repeatedly failed to comply with the drug court treatment program requirements, including numerous issues involving marijuana usage. The defendant "was 'sanctioned' five or six times and sentenced to significant jail terms wholly outside of those envisioned by his original sentence or probation." Id. at *3. In September 2008, the probation service filed an affidavit alleging that the defendant had tested positive for marijuana, had missed several required weekly meetings, and had been absent from his home. A revocation warrant was issued. The revocation hearing was

held before the trial judge who presided over the drug court. The defendant moved for recusal of the judge, averring that the judge was "already familiar with the materials that would comprise most of the state's proof at the probation revocation by virtue of his involvement." Id. at *4. Citing "the practical difficulties in bringing in a new judge every time someone violates their drug court contract," the trial judge denied the motion after acknowledging that "the defendant had raised a valid issue regarding his level of involvement with the subject matter[.]" Id. Following the hearing, the trial judge revoked the defendant's probation. On appeal, our court stated:

> In this appeal, the defendant claims that his due process rights were violated because the judge presiding over his probation revocation had previously served as a member of his drug court team and had received *ex parte* information regarding the defendant's conduct at issue by virtue of his prior involvement. After due consideration, we agree that the Due Process Clause requires that a defendant's probation revocation be adjudicated by a judge who has not previously reviewed the same or related subject matter as part of the defendant's drug court team. Accordingly, we reverse the decision below and remand the defendant's case for a new hearing in front of a different judge.

Id. at *1.

Since the release of the two opinions of this court, there have been significant changes affecting disqualification of judges, including judges presiding over drug courts. Our supreme court adopted the revised Code of Judicial Conduct effective July 1, 2012. The rule concerning ex parte communications is now Canon 2, Rule 2.9, which provides:

Rule 2.9. Ex Parte Communications

(A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:

(1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:

(a) the judge reasonably believes that no party will gain procedural, substantive, or tactical advantage as a result of the ex parte communication; and

(b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

(2) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties a reasonable opportunity to respond to the advice received.

(3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter.

(4) [Intentionally omitted]

(5) A judge may initiate, permit, or consider any ex parte communication when expressly authorized by law to do so.

(B) If a judge receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.

(C) A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed.

(D) A judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control.

Comment [4] to Rule 2.9 provides:

 [4] A judge may initiate, permit, or consider ex parte communications authorized by law. When serving on a mental health court or a drug court,

judges may assume a more interactive role with parties, treatment providers, probation officers, social workers, and others. However, if this ex parte communication becomes an issue at a subsequent adjudicatory proceeding in which the judge is presiding, the judge shall either (1) disqualify himself or herself if the judge gained personal knowledge of disputed facts under RJC 2.11(A)(1) or the judge's impartiality might reasonably be questioned under RJC 2.11(A) or (2) make disclosure of such communications subject to the waiver provisions of RJC 2.11(C).

Tenn. Sup. Ct. R. 10, RJC 2.9, comment [4].

Prior to the adoption of the revised Code of Judicial Conduct in 2012, the Tennessee Judicial Ethics Committee was asked to provide an opinion as to whether the "Code of Judicial Conduct permit[s] a judge, who is a member of a drug court team, to preside over the revocation/sentencing hearing of a defendant who is in the drug court program." Reviewing applicable case law and rules, the committee concluded, in Judicial Ethics Advisory Opinion No. 11-01, that such "recusal is required only if the appearance of impartiality should surface in the face of a fair and honest 'objective standard' analysis by the judge predicated upon the specific facts developed in each particular case."

A criminal court judge is not prohibited from presiding over a revocation simply because the revocation warrant alleges a violation of a rule of probation or community corrections, even if the rule was imposed by the criminal court judge, such as prohibiting the defendant from having contact with the victim. Likewise, a drug court judge is not prohibited from presiding over a community corrections revocation hearing or probation revocation hearing simply because the revocation warrant alleges a violation of a drug court rule, a drug court contract, or a drug court order.

The facts of this case differ fundamentally from the facts in Charles Hopson Stewart. The criminal court judge in this case, although a member of the drug court team, did not receive *ex parte* communications or input from the drug court team before deciding to revoke the Defendant's community corrections.

The facts of this case also differ fundamentally from the facts in Brent R. Stewart. Unlike the drug court judge in Brent R. Stewart, the criminal court judge in this case did not have a meaningful level of involvement with the Defendant during his time in the drug court program. In Brent R. Stewart, the drug court judge, working with the drug

court team, sanctioned the defendant multiple times for positive drug tests, and a positive drug test was one of the grounds alleged in the revocation warrant for the defendant.

In this case, the criminal court judge specifically disavowed any *ex parte* communications concerning the Defendant. The judge also stated that he had "absolutely no independent recollection of [the Defendant]" thereby indicating that he had no meaningful level of involvement with the subject matter of the revocation. There is no proof in this record indicating that the criminal court judge "gained personal knowledge of disputed facts." See Tenn. Sup. Ct. R. 10, RJC 2.9, comment [4]. Also, the mere fact that the criminal court judge was also the judge of the drug court does not reasonably call into question the criminal court judge's impartiality. That fact, alone, does not require disqualification. Accordingly, he was not disqualified from presiding over the Defendant's community corrections revocation hearing and did not err in refusing to transfer the case to another judge.

*Conclusion*

The judgment of the criminal court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE