IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 15, 2022

## CHRISTOPHER C. SOLOMON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sumner County**
**Nos. 2019-CR-525, 2016-CR-832          Dee David Gay, Judge**

_____

### No. M2021-00739-CCA-R3-PC

_____

The Petitioner, Christopher C. Solomon, pleaded guilty to aggravated vehicular homicide, aggravated vehicular assault, and leaving the scene of an accident resulting in death, and he received an effective thirty-three-year sentence. The Petitioner filed a petition for post-conviction relief, contending that he received ineffective assistance of counsel when trial counsel failed to seek the trial judge's recusal at sentencing. Following a hearing, the post-conviction court denied the petition, and the Petitioner appeals. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

M. Allen Ehmling, Gallatin, Tennessee, for the appellant, Christopher C. Solomon.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Ray Whitley, District Attorney General; and C. Ronald Blanton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

#### Guilty Pleas and Sentencing

In October 2016, the Petitioner, while driving under the influence, struck the victims, Mr. Robert Pyles and Ms. Dineen Cottrell, with his vehicle as they were walking

down the street. *State v. Christopher C. Solomon*, No. M2018-00456-CCA-R3-CD, 2018 WL 5279369, at *1 (Tenn. Crim. App. Oct. 23, 2018), *no perm. app. filed*. Mr. Pyles died as a result of his injuries, and Ms. Cottrell sustained serious injuries. *Id.* The Petitioner fled the scene, was found sitting in his vehicle heavily intoxicated, and repeatedly fell asleep during the interviews and the blood draw that followed. *Id.* The Petitioner was charged by indictment with aggravated vehicular homicide while having at least two prior convictions for driving under the influence ("DUI"), aggravated vehicular assault while having at least two prior DUI convictions, and leaving the scene of an accident resulting in death. *Id.* He pleaded guilty to the charges in the indictment with no agreement in place as to sentencing. *Id.*

The sentencing hearing transcript from October 2017 shows that Mr. Carson Bumbalough, a probation officer involved in the DUI court program, testified that the Petitioner entered the program in December 2013 after already having been provided treatment during a prior probationary sentence. Mr. Bumbalough stated that the Petitioner attended inpatient treatment for twenty-eight days and returned to complete the remainder of the program, which included classes for relapse prevention and drug and alcohol issues as well as "A.A. meetings," twelve-step meetings, meetings with the judge, and other activities. The Petitioner successfully completed the program, having only a "couple of issues," which Mr. Bumbalough stated were "not uncommon" in the program. Mr. Bumbalough stated that the Petitioner remained on probation following his completing the program due to consecutive sentences "from a previous probation and several charges." During Mr. Bumbalough's testimony, the trial judge, who also presided over the DUI court program, stated, "I didn't realize until this morning and I was looking through the warrants here that he was in our DUI Court program and successfully completed the program. This is a pretty big hit on the program." In response to the trial judge's questioning, Mr. Bumbalough testified that the Petitioner was treated for alcohol use initially but that issues relating to the Petitioner's drug use were also addressed during the program. He agreed that the program takes a year or more to complete and stated that the DUI and drug court programs "are the best, most intensive programs that I know of we have to offer in this County." Mr. Bumbalough indicated the Petitioner was the first person to complete the program who had subsequently been charged with an offense like vehicular homicide.

While making the court's factual findings, the trial judge cited the Petitioner's extensive treatment in the program as a factor in the court's sentencing decision. Specifically, the trial judge found that the program was not effective for the Petitioner, that he was not deterred after four prior DUI convictions, that his conduct was "a sad commentary on Drug Courts," and that the court was "very discouraged" that the Petitioner killed someone and "almost killed a second person" after completing the program. The trial judge cited the Petitioner's participation in the DUI court program

and other probationary sentences and found that "[t]he chances of rehabilitation are slim to none." Following the sentencing hearing, the trial judge imposed an effective thirty-three-year sentence and banned the Petitioner from driving for the duration of his life. *Christopher C. Solomon*, 2018 WL 5279369, at \*5. On appeal, this court reversed the lifetime driving ban but otherwise affirmed the sentences. *Id.* at \*8.

## Post-Conviction

On May 10, 2019, the Petitioner filed a timely pro se petition for post-conviction relief, and he filed an amended petition on April 19, 2021, following the appointment of counsel. Among other issues not raised on appeal, the Petitioner claimed that he received ineffective assistance of counsel because trial counsel failed to seek recusal of the trial judge presiding over his sentencing hearing. The Petitioner asserted that trial counsel should have sought recusal because the trial judge realized that the Petitioner had participated in the DUI court program and that the judge demonstrated bias by stating at the sentencing hearing, "This is a pretty big hit on the program." The post-conviction petition was heard by the same judge who had accepted the guilty pleas and imposed the sentences, and the Petitioner did not seek recusal at the post-conviction hearing.

At the post-conviction hearing, the Petitioner testified that he participated in the DUI court program for approximately one year and successfully completed the program. The program consisted of evening activities Monday through Friday. Once a week, he met with the presiding judge or judges, and the other weekly meetings consisted of classes or group activities. According to the Petitioner, the trial judge was one of the judges who presided over the program while he attended. The Petitioner stated that the trial judge presided over the program sometimes but not every time. On cross-examination, he said he did not know how many times the trial judge presided over the program. He stated that the trial judge once sanctioned him for failing a drug test while he was in the program. The Petitioner believed he told trial counsel that he had previously participated in the program. He stated that the trial judge made findings at the sentencing hearing relating to his participation in the program and his failure to maintain sobriety since completing the program. He believed trial counsel should have sought recusal and a hearing to determine whether the trial judge possessed extraneous information about his participation. In response to the post-conviction court's questioning, the Petitioner agreed that he deserved to be sanctioned during his time in the program and that he was treated similarly to other program participants.

Trial counsel stated that the Petitioner's participation in the DUI court program "was not on [his] radar" until Mr. Bumbalough testified at the sentencing hearing. He stated that he did not have any records showing that he and the Petitioner discussed the Petitioner's treatment in the program. Trial counsel explained that one of the judgments

of prior conviction he would have reviewed after being appointed to represent the Petitioner contained a condition of probation requiring treatment in the program. However, trial counsel stated that he would have reviewed the prior judgments for "validity," relevance to enhancement, factual allegations, whether the judge signed the judgments, and whether counsel was waived. He asserted that he would not have reviewed the Petitioner's conditions of probation listed in the prior judgments. He agreed that he was aware the trial judge was involved in the program, but he could not recall whether he knew at the time of sentencing that the Petitioner had been in the program. Trial counsel stated that he knew the Petitioner's participation in the program "was certainly an issue," but he did not "know if it struck [him] at that point . . . that there had been interactions between [the Petitioner] and [the trial judge] through the course of the program that would be an issue." He did not recall "it even striking" the trial judge that the Petitioner had been in the program.

Trial counsel stated that he did not seek recusal because the Petitioner had completed the program, and trial counsel did not believe that it would have been "per se grounds for recusal." He agreed that he could have requested recusal, but he did not know if it would have been successful. He believed the fact that the Petitioner completed the program "mattered a lot to the court" but did not perceive the trial judge as "remember[ing] any interaction with the Petitioner during his time in the [program]." He agreed that he could have explored the extent of the trial judge's recollection of the Petitioner or consulted the Petitioner about it but he did not. On cross-examination, trial counsel stated that he did not believe it was necessary to seek recusal of the trial judge. A judgment form for a DUI second offense conviction dated December 17, 2013, was entered as an exhibit to the post-conviction hearing and showed that the Petitioner was ordered to attend the DUI court program as a condition of probation.

The post-conviction court made a general credibility finding in favor of trial counsel and against the Petitioner. The post-conviction court found that the Petitioner's participation in the program was relevant to both deterrence and amenability to rehabilitation. The court found that the Petitioner agreed that the court did not exhibit bias or prejudice toward the Petitioner prior to imposing the sentences. The judge also noted that he was unaware until the time of the post-conviction hearing that he had previously sanctioned the Petitioner during the DUI court program. The judge stated that he "wouldn't know him from any other defendant," noting that a number of years passed between the Petitioner's participation in the program and the offenses underlying the present case. The court credited trial counsel's testimony that he did not seek recusal because he did not perceive the trial judge as biased or prejudiced. In the written order denying post-conviction relief, the court reiterated it had no recollection of the Petitioner or of the details surrounding his participation in the program. The court concluded that

the Petitioner failed to show trial counsel was ineffective, and it denied his petition. The Petitioner appeals.

## ANALYSIS

The Petitioner contends that the post-conviction court erred in denying his petition because he received ineffective assistance of counsel. A petitioner may request post-conviction relief by asserting that his conviction or sentence is void or voidable because of the abridgment of his constitutional rights provided by the Tennessee or the United States Constitutions. T.C.A. § 40-30-103. To obtain post-conviction relief, a petitioner must prove the allegations of fact made in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "[Q]uestions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001) (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)). Additionally, appellate courts may not "substitute their own inferences for those drawn by the trial court." *Id.* (citing *Henley*, 960 S.W.2d at 579). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013). "A claim of ineffective assistance of counsel is a mixed question of law and fact." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014) (citing *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011)).

A criminal defendant has a right to the assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to assistance of counsel inherently guarantees that counsel's assistance is "effective." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). To prove that counsel was ineffective, a petitioner must show that (1) counsel performed deficiently and (2) such deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This standard requires a petitioner to demonstrate that the "services rendered or the advice given" were "'below the range of competence demanded of attorneys in criminal cases.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Counsel must have made errors so serious that counsel was not functioning as the "'counsel'" guaranteed by the Sixth Amendment. *Strickland*,

466 U.S. at 687. Measuring counsel's performance requires giving deference to counsel's decisions, and courts must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Accordingly, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland* 466 U.S. at 689).

To demonstrate that counsel's deficient performance prejudiced the defense, a petitioner must prove "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Dellinger*, 279 S.W.3d at 293 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a petitioner must establish both deficiency and prejudice to prove ineffective assistance of counsel, a court need not address both prongs where the petitioner has failed to establish one of them. *See Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

In the present case, the Petitioner argues that trial counsel should have sought recusal at sentencing because the trial judge realized that the Petitioner had participated in the DUI court program and that the judge demonstrated bias by stating at the sentencing hearing, "This is a pretty big hit on the program." "Tennessee litigants are entitled to have cases resolved by fair and impartial judges." *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citations omitted). In *State v. Brent R. Stewart*, the defendant was sentenced to probation originally but agreed to enroll in the drug court treatment program as part of an agreement following his violating the terms of probation. No. W2009-00980-CCA-R3-CD, 2010 WL 3293920, at *3 (Tenn. Crim. App. Aug. 18, 2010). The judge presiding over the defendant's drug treatment program imposed sanctions, including significant jail time, and ultimately expelled him from the program. *Id.* at *4. Based on the defendant's expulsion from the program, the same judge held a probation revocation hearing during which the defendant sought recusal based on the judge's participation in his drug court treatment. *Id.* The judge declined to recuse himself despite acknowledging that the "defendant had raised a valid issue regarding his level of involvement with the subject matter." *Id.* We concluded that "the Due Process Clause does indeed bar any member of the defendant's drug court from adjudicating a subsequent parole revocation *when the violations or conduct at issue in both forums involves the same or related subject matter.*" *Id.* at *4 (emphasis in original). Thus, we

determined that the judge's involvement in both proceedings while possessing ex parte information violated the defendant's right to due process. *Id.* at *13. However, *Brent R. Stewart* is easily distinguishable from the facts presented in the present case on two grounds. First, the record in *Brent R. Stewart* showed that the judge possessed a significant amount of information about the defendant from the drug court in the revocation hearing, while the trial judge in the present case stated he did not remember the Petitioner or any information about the Petitioner. Second, the *Brent R. Stewart* defendant's misconduct in the drug court led to the revocation hearing and thus involved the same or related subject matter. *Id.* The Petitioner in the present case completed the DUI court program as a condition of probation for a prior criminal conviction unrelated to the current convictions. The current convictions and sentencing for those convictions only followed the Petitioner's conduct resulting in new criminal charges years after completion of the program. Therefore, the sentencing hearing following the current convictions did not involve the same or related subject matter as the Petitioner's prior DUI court program.

Following the disposition in *Brent R. Stewart*, our supreme court adopted the revised Code of Judicial Conduct effective July 1, 2012. *See State v. Watson*, 507 S.W.3d 191, 195 (Tenn. Crim. App. 2016). Rule 2.9 of the code concerns the judge's duties when confronted with situations concerning ex parte communications. *See* RJC 2.9. Comment [4] to Rule 2.9 provides that

> A judge may initiate, permit, or consider ex parte communications authorized by law. When serving on a therapeutic or problem-solving court, including but not limited to a mental health court, a drug recovery court, a veteran's court, or a behavioral health recovery oriented compliance docket, judges may assume a more interactive role with parties, treatment providers, probation officers, social workers, and others. However, if this ex parte communication becomes an issue at a subsequent adjudicatory proceeding in which the judge is presiding, the judge shall either (1) disqualify himself or herself if the judge gained personal knowledge of disputed facts under RJC 2.11(A)(1) or the judge's impartiality might reasonably be questioned under RJC 2.11(A) or (2) make disclosure of such communications subject to the waiver provisions of RJC 2.11(C).

Rule 2.11 provides in relevant part that disqualification is necessary where "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." RJC 2.11(A)(1). Courts utilize an objective analysis of Rule 2.11, which requires recusal "if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find

a reasonable basis for questioning the judge's impartiality.'" *Cook*, 606 S.W.3d at 255 (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001)).

A panel of this court applied the above rules in *State v. Watson*, to circumstances involving a judge who presided over the defendant's drug court program and subsequently presided over the defendant's probation revocation proceeding arising from the defendant's misconduct in the program. 507 S.W.3d at 197. The judge disavowed any ex parte communication with the defendant and maintained that he had "'absolutely no independent recollection of the defendant.'" *Id.* The defendant's probation was revoked in full following a hearing, and the defendant appealed on the basis that the judge should have recused himself. *Id.* We observed on appeal that there was no proof showing the judge "'gained personal knowledge of disputed facts.'" *Id.* (quoting Tenn. Sup. Ct. Rule 10, RJC 2.9, comment [4]). We also reasoned that the "mere fact that the criminal court judge was also the judge of the drug court does not reasonably call into question the criminal court judge's impartiality." *Id.* Accordingly, we determined that the judge was not disqualified from presiding over the defendant's revocation hearing. *Id.*

The fact that the judge in the present case presided over the DUI court program does not, in itself, require recusal. The Petitioner entered the DUI court program in December 2013 as a condition of probation of a prior conviction, and it is undisputed that he successfully completed the program approximately one year later. Years later, in October 2016, the Petitioner struck the victims with his vehicle while driving under the influence, and new criminal charges were brought against him. Following the Petitioner's pleas of guilt to those charges, the trial court held a sentencing hearing in October 2017. The trial judge presiding over the Petitioner's sentencing hearing also had presided over some of the Petitioner's participation in the DUI court program. Following Mr. Bumbalough's initial testimony, the trial judge stated at the sentencing hearing that he did not know prior to the hearing that the Petitioner had previously completed the DUI court program. The trial judge then questioned Mr. Bumbalough, who in turn testified to various details regarding the Petitioner's participation. Along with other findings unrelated to the Petitioner's program participation, the trial judge weighed the Petitioner's completion of the program negatively in its consideration of deterrence and the Petitioner's amenability to rehabilitation. The Petitioner does not allege on appeal that trial counsel should have sought recusal because the judge possessed ex parte information or "personal knowledge of disputed facts," and we conclude that the judge's mere participation on the DUI court does not require recusal. *See* RJC 2.9, comment [4]; *Watson*, 507 S.W.3d at 197.

The Petitioner also argues that the trial judge's statement that "[t]his is a pretty big hit on the program" evinces the judge's lack of impartiality in his sentencing hearing.

We observe that the Petitioner has not offered any basis on which the trial judge's statement could be reasonably construed as indicating a lack of impartiality. Instead, the record reflects that the statement was made in response to Mr. Bumbalough's testimony concerning the Petitioner's completion of the DUI court program. In the post-conviction hearing, the court noted that the Petitioner's completion of the program was an important factor in its consideration of deterrence and the Petitioner's amenability to correction at sentencing. The judge also noted that he did not recognize the Petitioner or remember details of the Petitioner's participation in the program. Accordingly, the Petitioner has failed to show that there was a reasonable basis for questioning the trial judge's impartiality. *See Cook*, 606 S.W.3d at 255. Because there was no actual or reasonable basis for requesting recusal of the trial judge, trial counsel was not deficient for failing to seek recusal of the trial judge. *See Antonio Dewayne Bledsoe v. State*, No. M2004-01132-CCA-R3-PC, 2005 WL 1240172, at *3 (Tenn. Crim. App. May 24, 2005) ("[T]rial counsel cannot be considered deficient for failing to make or pursue a motion that would have been meritless."). Additionally, the Petitioner has not made a showing of prejudice for any failure to request recusal. The Petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE